IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GARY EUGENE ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV05-510-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| WARDEN RANDY BLADES and | ) | |
| JOHN-JANE DOE PARTIES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case was reassigned to this Court by United States Magistrate Judge Mikel H. Williams. Pending before the Court are several Motions filed by the Plaintiff, as well as a Motion for Summary Judgment filed by Defendant Randy Blades. Having reviewed the Motions, Responses and relevant portions of the record, the Court concludes that oral argument is unnecessary to resolve the Motions. Accordingly, the Court enters the following Order.

**PRELIMINARY MOTIONS**

Plaintiff has filed a Motion to Compel Defendant to Produce Documents (Docket No. 24). Plaintiff sent a request for production of documents to Defendant on September 8, 2006. He alleges that Defendant has not responded. Defendant states that he has produced 500 pages of medical records to Plaintiff, as well as approximately 150 supplemental pages, and that no further records exist. Plaintiff has not filed a reply to contest Defendant's

**MEMORANDUM ORDER  1**

representation of the documents produced, and, therefore, the Court shall deem the Motion to Compel moot.

Plaintiff has also filed a Motion to Amend his Complaint to add 23 Defendants who apparently are the "John and Jane Does" listed in his original Complaint (Docket No. 26). Plaintiff's Motion shall be granted, and an amended complaint shall be filed no later than August 31, 2007.

The Court will set forth the following guidelines for Plaintiff to follow in his amendment, in the interest of judicial economy and lessening the burden of litigation on the parties. Rather than divide his complaint into separate sections containing defendants, facts, causes of action, and prayers for relief, Plaintiff shall organize his complaint by causes of action. Under each cause of action, he shall state the following (1) the names of the persons who personally participated in causing the alleged deprivation of his constitutional rights; (2) the dates on which the conduct of each defendant allegedly took place, (3) the specific conduct or action Plaintiff alleges is unconstitutional, (4) the particular constitutional provision under which Plaintiff makes the claim, and (5) the particular type of relief he is seeking from each Defendant. Plaintiff need not repeat facts in subsequent causes of action if prior facts are applicable to more than one cause of action, but Plaintiff must include a statement under the subsequent cause of action that Plaintiff is incorporating certain preceding paragraph numbers by reference. The Court will review Plaintiff's amended complaint once it has been filed to determine whether he can proceed on the claims against the newly-named defendants.

**MEMORANDUM ORDER  2**

Plaintiff's Motion for Extension of Time to Complete Discovery (Docket No. 26-2) is granted. After any new defendants have answered, the Court will set a new discovery and dispositive motion date.

Plaintiff's Request for Extension of Time to File Response to Motion for Summary Judgment (Docket No. 30) is granted. Plaintiff has filed his Response, as well as a Supplement, and the Court has considered them.

## DEFENDANT BLADES' MOTION FOR SUMMARY JUDGMENT

**A.   Introduction**

Defendant Warden Randy Blades asserts entitlement to qualified immunity in his summary judgment motion. The threshold question the Court resolves prior to undertaking a qualified immunity analysis is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right of the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 200, 201 (2001). Because the Court answers this question in the negative, finding that the facts alleged do not show that Blades' conduct violated Plaintiff's Eighth Amendment right to medical care, the Court does not undertake a full qualified immunity analysis.

**B.   Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the

**MEMORANDUM ORDER  3**

outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for

**MEMORANDUM ORDER  4**

the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**MEMORANDUM ORDER 5**

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

**C.    Facts**

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC). At the time of the incidents, Plaintiff was housed at the Idaho State Correctional Institution (ISCI). Randy Blades was the warden of ISCI at the time Plaintiff was injured in April 2005, through the time period Plaintiff was transferred to the Idaho Maximum Security Institution (IMSI) in April 2006.

Warden Blades is not a medical doctor nor a health care provider himself, but relies on the prison medical contract provider to provide medical care. However, final responsibility for ensuring that all prisoners in his facility receive proper medical care lies within his authority.

The pertinent time line related to Plaintiff's claims is as follows:

**MEMORANDUM ORDER  6**

| | |
|---|---|
| April 26, 2005 | Plaintiff injured his right foot and ankle while walking from the restroom to his cell. Correctional officers called the medical unit, who sent staff to wrap Plaintiff's foot and place ice packs on it. Plaintiff was provided with Ibuprofen and crutches for his injury. |
| April 28, 2005 | Plaintiff received a medical evaluation of his right foot and ankle. Dr. Elliott Blakesley ordered x-rays for "tomorrow at 10 a.m." |
| May 10, 2005 | Medical records indicate "No show for chronic care clinic." |
| May 13, 2005 | Plaintiff wrote an inmate concern form to Lt. Schwartz, saying he was supposed to have an x-ray but never did, and he can't walk on his foot. On May 31, 2005, Schwartz responded that he emailed Mr. Hynes concerning Plaintiff's foot. |
| May 18, 2005 | Plaintiff received x-rays. Physician Assistant (P.A.) Tomey interpreted the x-ray as being suspicious for a fracture. The radiologist interpreted the film as negative for fracture or dislocation. |
| May 19, 2005 | P.A. Tomey put a cast on Plaintiff; the cast remained on for four weeks. |
| June 7, 2005 | P.A. Tomey suspects ligament damage. His notes indicate the cast has been abused, and is soft from water; it is removed. |
| June 2005 - July 2005 | Plaintiff was in administrative segregation for disciplinary issues and did not see medical providers for scheduled appointments during this time period. |
| July 6, 2005 | Plaintiff wrote an inmate concern form to Warden Blades, requesting to speak to him about disciplinary action that had been taken against him. The Warden came to speak to him and noticed Plaintiff was limping, and asked Plaintiff about his ankle. Plaintiff alleges that the Warden made a voice-recorded memo to check into it. |
| August 2005 | Plaintiff alleges that P.A. Tomey prescribed a brace for Plaintiff's ankle, but he never received it. |
| Sept. 19, 2005 | Plaintiff wrote an inmate concern form to the medical supervisor, saying that his foot healed wrong and he was having problems walking and was in constant pain. He said he was in lay-in and was not getting |

**MEMORANDUM ORDER** 7

|  |  |
|---|---|
|  | his pain pills. He said he was waiting for an appointment with a specialist and did not know why it takes so much to get help. The answer on September 23, 2005, was "You are scheduled to see a provider next week. You have been getting your meds since 9-20." |
| October 7, 2005 | Plaintiff writes an inmate concern form to Ted Lucas, the medical unit supervisor, stating that nothing has really been done to resolve his foot issue. The response was that "this issue needs to be discussed with an MD or PA." |
| October 10, 2005 | Plaintiff sends an inmate concern form to Ted Lucas. He states he has not been seen, he needs more medication, and he has not received the brace that was ordered two months ago. The reply was that "You need to see a provider for renewals. The request for an offsite appt. has not been approved yet." |
| October 18, 2005 | Plaintiff wrote that this was his second concern from to Ted Lucas about his foot/ankle problem. He states that he is in constant pain and that he can't walk. He states he had been referred for surgery, a brace, and to a specialist, and had not received surgery, a brace, or a visit to the specialist. Robin Babbitt, R.N., stated that he was scheduled to be seen in the outpatient clinic on October 27, 2005. She stated that he had obtained a referral on September 14, and the referral was still being processed. |
| November 2, 2005 | Plaintiff wrote an inmate concern form stating that he had filed a grievance regarding his foot/ankle. The response from the grievance coordinator was that there was no grievance filed under the reference number provided by Plaintiff. |
|  | Plaintiff also filed a grievance complaining of continuing nontreatment and neglect of his right foot injury. The response by R. Babbitt, R.N. states that they had not received any Health Services Request Forms since September 1, 2005. Babbitt indicated that Plaintiff had been scheduled to see a podiatrist. The grievance was denied at the supervisory level, stating that Plaintiff is currently scheduled to see the podiatrist. |
| November 9, 2005 | Plaintiff filed an inmate concern form with Warden Blades, saying this is the second concern form he has sent on this matter. He has submitted a grievance and the second time that it was sent back unanswered about |

**MEMORANDUM ORDER  8**

|               | the continued neglect and failure of medical to treat the problems he is having with his right foot after it was injured in April 2005. Warden Blades responded on November 15, 2005, saying he would forward the concern to medical personnel, with a copy to M. Lott, D. Haas, and T. Lucas. |
|---|---|
|               | Plaintiff also filed a grievance for the continued neglect and nontreatment of injury to his right foot, which occurred in April 2005. He states in the grievance that he has written numerous concern forms to medical staff, supervisors, Ted Lucas, and Warden Blades, as well as multiple health requests. He notes that he is in constant pain and can barely walk or stand. He alleges Eighth Amendment deliberate indifference. There is no response in the Courts' record. (Docket No. 28-9). |
| Nov. 23, 2005 | Plaintiff filed a second inmate concern form with Warden Blades. He says that he had submitted two grievances on the continued neglect of medical to treat his medical issues regarding his injured right foot, that he discussed with the Warden previously. He states that both grievances were returned unanswered. The Warden responded that he would forward his concern to the proper medical personnel that can look in to the issue, with a copy to T. Lucas and D. Haas. |
|               | Also on this date, Plaintiff sent the same inmate concern form to Mary Lott, saying his grievance had been returned unanswered. Lott said to send the grievance back to her to "see if we can make this work." (Docket No. 28-9). |
| December 2005 | Plaintiff had steroid injections in his foot. He alleges that this made the pain worse. |
| January 7, 2006 | Plaintiff filed a third inmate concern form with Warden Blades. It stated: "I am writing this concern form to let you know that the information on my grievance (the response) is incorrect. I have not received my brace nor gel cups and have not been on pain medication for over a month. I am in severe pain and have been trying to get back on my Vicodin. I am also in a wheelchair now. I would like your help getting this taken care of. Thank you." The response was "Mr. Allison: I will forward a copy to the IDOC Contract manager for review. I will also contact medical and ask for feedback on your case. I will forward your concerns to medical as |

**MEMORANDUM ORDER  9**

well."

| | |
|---|---|
| January 13, 2006 | Plaintiff was seen by a podiatrist, Dr. Shane York for chronic right heel pain. Dr. York noted that Plaintiff had been using a wheelchair for the past several months as a result of his pain. He also noted: "Conservative treatments have failed at this time consisting of off-weight bearing and injections to the plantar fascia. The doctor recommended "an ankle foot orthotic in order to treat the multiple pathologies that exist to the right foot and ankle." The doctor recommended that "[i]f no improvement of symptoms with conservative therapy, further diagnostic modalities should be considered to exclude mass (space occupying lesion) to the tarsal tunnel region." (Docket No. 28-10). |
| February 20, 2006 | Plaintiff filed a fourth inmate concern form with Warden Blades, stating: "I am writing this concern to ask for your help in the following matter. for the last 10 months I have been in constant and severe pain due to an injury to my right foot. I have continually asked for treatment and for something for the pain. As of now, I am receiving nothing for the pain nor have I received any of the treatment ordered by the doctors or the specialist I saw in Boise, I would like this matter taken care of and would like your help to solve this matter. Thank you." The response was: "Forward to Medical for review and advisement to me so I can respond to you. cc: P. Torrez, D. Haas, A. [illegible]." |
| March 4, 2006 | Plaintiff filed a third grievance, again asserting deliberate indifference. The response from staff indicates that Plaintiff had been to seventeen appointment for his foot injury, and had an orthopaedic specialist visit coming up on March 8, 2006. The nurse indicated that the medical department was awaiting recommendations from the specialist and would follow the recommendations. The grievance appeal was denied because the supervisor indicated that Plaintiff had received appropriate medical care. |
| March 8, 2006 | Plaintiff was seen by an orthopedic doctor, Dr. Gregory Schweiger. These records indicate that Plaintiff reported an injury that sounded like an ankle sprain in April of 2005 and another injury in the Fall of 2005. Dr. Schweiger examined Plaintiff and recommended that Plaintiff "start with stretching of the Achilles and calf muscle and if the entire problem if not a large portion of this is due to plantar fascitis he will definitely improve." The doctor noted: "I am not sure that he is pleased with this |

**MEMORANDUM ORDER  10**

> approach but certainly I think that the appropriate treatment is to start conservatively with the simplest approach and proceed with further work-up if his pain continues." (Docket No. 28-10). Plaintiff alleges that the exercises did not help the condition.

March 21, 2006      Plaintiff filed a grievance alleging deliberate indifference regarding his right foot problem. The response was "Offender has been treated in medical since injury in 4/2005. He had foot x-ray, podiatry consult and most recently orthopedic specialist appt. on 3/8/06. Has had 17 medical appointments since foot injury -- medical has not ignored your problem." At both levels of review, including the appeal, prison staff agreed that he had been receiving appropriate medical care and needed to continue seeking care and following the treatment plans. Paul Torrez was the reviewing authority on appeal.

April 2006          Plaintiff was transferred from ISCI to IMSI for hitting someone.

## C. Discussion

The foregoing chronology shows that Plaintiff has received various types of treatment since his right foot was injured on April 26, 2005. X-rays were ordered on April 28, 2005, but were not performed until May 18, 2005. Plaintiff received a cast and medications in May 2005. Plaintiff was in administrative segregation in June and July and did not attend his doctor's visits during those months (there are no allegations as to why he did not attend the visits).

Warden Blades verbally inquired about Plaintiff's limping in July 2005, when he was visiting Plaintiff in response to Plaintiff's complaints about disciplinary actions taken against him. Warden Blades said that he would look into the matter.[1] Plaintiff alleges that P.A.

---

[1] Because Warden Blades did not receive a written complaint from Plaintiff about his foot care until November 2005, Warden Blades had no reason to believe that Plaintiff was not receiving proper medical care for his foot between July 2005 and November 2005.

**MEMORANDUM ORDER 11**

Tomey recommended a brace in August 2005, but that it was never ordered.

Plaintiff began making regular written complaints to the medical department about the lack of resolution of his foot problem in September 2005. Plaintiff sent two concern forms to Warden Blades in November 2005. Prison medical staff tried steroid injections in December 2005. About this time, Plaintiff was also given a wheelchair to use to take the weight off of Plaintiff's foot.

Plaintiff sent a third concern from to Warden Blades on January 7, 2005, complaining of lack of care. A week later, on January 13, 2006, Plaintiff was sent to a podiatrist, Dr. York, who recommended an orthotic. Plaintiff sent a fourth concern form to Warden Blades on February 20, 2006, where he stated: "As of now I am receiving nothing for the pain nor have I received any of the treatment ordered by the doctors or the specialists I saw in Boise" (Docket No. 28-9). Fifteen days later, Plaintiff was sent to an orthopedic specialist in March 2006, who recommended only exercise. Plaintiff was transferred from ISCI to IMSI for hitting another inmate in April 2006, thus ending Warden Blades' responsibility for Plaintiff's care.

The foregoing facts show that each time Plaintiff complained to Warden Blades, he received a new and different type of treatment. The longest delay between a complaint to Warden Blades and medical care for Plaintiff was about a month, while the shortest delay was one week. These are typical waiting periods that Plaintiff would encounter if he were not

**MEMORANDUM ORDER  12**

incarcerated and seeking care from private medical providers.[2]

A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d at 1335. There is no evidence that the delays that may have been caused by Warden Blades caused serious harm. Rather, Plaintiff's medical condition was ongoing and apparently difficult to diagnose. The prison medical providers were making an effort to diagnose and treat it in different ways during the time period Warden Blades was involved. For example, after Plaintiff complained to Warden Blades, Plaintiff received steroid injections and saw a podiatrist and orthopedic doctor. These doctors had different opinions on the type of treatment required; one recommended a brace, the other, exercise.

Under these circumstances, Warden Blades, who has no medical training, has shown that, during the time period he received written complaints from Plaintiff, prison medical personnel were being "consistently responsive to Plaintiff's medical needs." *Toguchi v. Chung*, 391 F.3d at 1061. There is no evidence that Warden Blades had subjective knowledge of, and consciously disregarded, a substantial risk of serious injury regarding Plaintiff's condition. In addition, even if Warden Blades did nothing about Plaintiff's problem other than forwarding Plaintiff's Inmate Concern Forms to the medical department,

---

[2] This same analysis may or may not apply to the medical care providers, depending upon how long they knew about delays in treatment and whether the delays were reasonable under the circumstances.

**MEMORANDUM ORDER  13**

Plaintiff has not shown that there is any causal link[3] between his allegation that Warden Blades did nothing and Plaintiff's continuing foot problem because Plaintiff did, *in fact*, receive different and additional care after each complaint, including visits to two off-site specialists. A month after he visited the orthopedic doctor who recommended beginning conservatively with exercises, Plaintiff was transferred to IMSI because he hit another inmate. At that point, any responsibility of Warden Blades for Plaintiff's care ended. As a result of all of the foregoing, Warden Blades is entitled to summary judgment on all of Plaintiff's claims against him.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Compel Defendant to Produce Documents (Docket No. 24) is MOOT.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Amend Complaint ( Docket No. 26-1) is conditionally granted. Plaintiff shall file a comprehensive amended complaint no later than **August 31, 2007.** The Court shall first review the Complaint to determine whether Plaintiff has stated a cause of action against each of the new Defendants before ordering service on any new Defendant.

---

[3] An essential element of a § 1983 case is that the plaintiff show that the defendant's actions *caused* the deprivation of a constitutional right. 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The causation requirement of § 1983 . . . is not satisfied by a showing of mere causation in fact[;] [r]ather, the plaintiff must establish proximate or legal causation." *Id*. The Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which he complains." *Id*. (internal citation omitted).

**MEMORANDUM ORDER 14**

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Extension of Time to Complete Discovery (Docket No. 26-2) is GRANTED. The Court will set new deadlines after the new Defendants have been added.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Request for Extension of Time to File Response to Motion for Summary Judgment (Docket No. 30) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Warden Randy Blades' Motion for Summary Judgment (Docket No. 28) is GRANTED. All claims against Warden Blades are dismissed with prejudice.

DATED: **August 16, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER 15**